**TODD MARINE ENTERPRISES, INC., Plaintiff,**

v.

**CARTER MACHINERY COMPANY, INC., Defendant.**

**Civ. A. No. 2:95cv218.**

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 14, 1995.

Michael J. Gardner, Clark & Stant, P.C., Virginia Beach, VA, for Plaintiff.

James A. Gorry, III, Richard W. Zahn, Jr., Taylor & Walker, P.C., Norfolk, VA, for Defendant.

## OPINION AND ORDER

PRINCE, United States Magistrate Judge.

This matter came before the Court on defendant's Motion for Partial Summary Judgment. A hearing was held on September 7, 1995, at which James A. Gorry, III, Esquire, and Richard W. Zahn, Jr., Esquire appeared for defendant; and Michael J. Gardner, Esquire appeared on behalf of plaintiff. The proceedings were reported by Sharon Borden, Official Court Reporter. On September 1, 1995, the parties consented to have a Magistrate Judge conduct all proceedings in the case pertaining to defendant's Motion For Partial Summary Judgment, and order a judgment on that motion, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

### Nature of the Case

This is a claim involving a contract to install engines aboard the M/V WILD THING ("WILD THING") and the allegedly negligent installation thereof. Plaintiff seeks from defendant (i) the cost of repairing the main engines, (ii) the expenses Todd Marine incurred in support of the main engine repairs and (iii) the revenue Todd Marine lost as a result of having the WILD THING out of commission for 10 weeks due to repairs. Defendant filed a Motion for Partial Summary Judgment with respect to plaintiff's claim for lost revenue on the grounds that it is too speculative to justify any damage award.

### Facts

In May of 1993, the construction of the M/V WILD THING, a 100 foot trimaran, was completed. WILD THING was constructed under the direction of plaintiff Todd Marine ("Todd Marine") for use as a high speed "thrill boat" and was a one of a kind design. The vessel commenced operations from Rudee Inlet in Virginia Beach soon after construction was completed, but immediately experienced engine difficulties.

In the spring of 1993, Todd Marine contacted defendant Carter Machinery Company ("Carter") to replace the three main propulsion engines on the WILD THING. Carter began installation of the three engines on the boat in August using its own employees. Carter also conducted sea and dock trials of the engines. After the installation of the new engines was complete, WILD THING resumed operations at Rudee until early October, 1993. In October a decision was made by Todd Marine to move WILD THING to St. Thomas in the U.S. Virgin Islands in order to have a warmer climate for winter operations. The vessel sailed for St. Thomas in late October, but encountered foul weather off the South Carolina coast and sustained damage. No damage to the engines, however, resulted from this incident. The vessel

underwent repairs in Georgetown, South Carolina, until November 2. WILD THING resumed its voyage to St. Thomas on that date. On November 8, while at anchor in rough seas at Hogsty Reef in the Bahamas, plaintiff claims that the vessel took on salt water through its exhaust ports which damaged the engines. Todd Marine then brought an action alleging a breach of the implied warranty of workmanlike performance. Defendant filed this Motion For Partial Summary Judgment with respect to plaintiff's claim for lost revenue on the grounds that the claim is too speculative to justify any damage award.

### Discussion

#### A. Applicable Law

Todd Marine alleges in its Brief In Opposition To Defendant's Motion For Summary Judgment that admiralty law applies to this case. Plaintiff's Brief at 5. Todd Marine bases that assertion on the fact that the contract to install the engines was a "maritime contract" to which admiralty law properly applies. Carter, on the other hand, contends that Todd Marine's breach of warranty claims arise out of the Virginia enactment of the Uniform Commercial Code. Carter cites in its Brief In Support of Motion For Partial Summary Judgment the decision in *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 872 n. 7, 106 S.Ct. 2295, 2303 n. 7, 90 L.Ed.2d 865 (1986), for the proposition that contracts for the supply of materials to a ship are governed by state law. Defendant's Brief at 4, n. 4. The situation that faced the Court in *East River*, however, is distinguishable from the case at bar. *East River* concerned shipbuilding contracts, which are traditionally outside admiralty jurisdiction. 476 U.S. 858, 859–60, 106 S.Ct. 2295, 2296–97. *See People's Ferry Co. v. Beers*, 61 U.S. (20 How.) 393, 401, 15 L.Ed. 961 (1858) (shipbuilding contracts not within admiralty jurisdiction because they are "made on land, to be performed on land."); *Point Adams Packing Co. v. Astoria Marine Constr. Co.*, 594 F.2d 763 (9th Cir.1979) (holding that since admiralty jurisdiction does not extend to shipbuilding contracts, it also does not extend to a breach of the shipbuilder's warranty of workmanlike per-

formance). Admiralty law properly applies, however, to contracts where admiralty jurisdiction is well established.

As a general rule, admiralty law applies to all maritime contracts. *New England Mutual Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 29, 20 L.Ed. 90 (1871). A contract is maritime if it relates "to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." *J.A.R., Inc. v. M/V LADY LUCILLE*, 963 F.2d 96, 98 (5th Cir.1992). Contracts to repair or perform extensive reconstruction of a ship are within admiralty jurisdiction. *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99, 42 S.Ct. 243, 66 L.Ed. 482 (1922). The essence of the contract at issue was to perform an extensive reconstruction of the WILD THING, e.g., to install new engines. In *Little Beaver Enterprises v. Humphreys Railways*, 719 F.2d 75 (4th Cir.1983), the court applied admiralty law to a contract for the installation of a new steering system on a ship. *Id.* at 76. *Little Beaver* governs here, even though the case at bar concerns a vessel's engines rather than its steering system. Both are items essential to all aspects of a ship's operation as a maritime vessel. This Court finds that the contract at issue was a maritime contract, and therefore that admiralty law governs.

#### B. Motion for Summary Judgment

##### 1. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission

must foreclose the possibility of the existence of facts from which a jury could make inferences favorable to the non-movant. *Id.*

■ In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed. R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. When a motion for summary judgment is made and supported with affidavits as it is in this case, however, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The burden of Todd Marine on this Motion for Partial Summary Judgment was to set forth facts showing that damages resulting from its lost revenues could be proved at trial. This Court finds that plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The defendant's Motion for Partial Summary Judgment is correspondingly GRANTED.

### 2. *Discussion*

■ A plaintiff claiming damages from lost revenue must prove those damages with "reasonable certainty", based on evidence that is more than mere speculation or conjecture. *Marine Transport Lines, Inc. v. M/V TAKO INVADER*, 37 F.3d 1138, 1140 (5th Cir.1994) (applying admiralty law to a claim for lost profits);[1] Michie's Jurisprudence, Damages, § 13. Although it may be true, as plaintiff alleges, that under the law of admiralty there is no per se bar on the recovery of lost revenues, plaintiff has not made a showing sufficient to prove its claim for damages within a reasonable degree of certainty.

■ In its Brief In Opposition To Defendant's Motion For Partial Summary Judgment, plaintiff alleges three factors as a reasonable basis for computing its lost revenue:

(i) Todd Marine had a commitment for regularly scheduled work for the period that WILD THING was out of commission;

(ii) Todd Marine had a reasonable basis for calculating operating costs; and

(iii) Todd Marine had a reasonable basis for estimating the passengers it would have served had it been able to operate the WILD THING.

Plaintiff's Brief at 9. The Court disagrees with the assessment that these factors provide a reasonable basis for the computation of damages, and finds no basis for anything other than a speculative estimate of plaintiff's lost revenues.

Turning to the first factor plaintiff cited as a reasonable basis for computing damages, the Court finds nothing more than an expectation of work, and not a ground for the assessment of damages. Plaintiff claims that a letter dated November 4, 1993, from the President of V.I. Adventures formed the basis of an agreement for regular work during the period WILD THING was inoperable.[2] Plaintiff's Exhibit G. Review of the document, however, indicates that an enforceable

---

1. Although *Marine Transport* addressed a claim for lost profits, Todd Marine's claim for lost revenue includes their claims for lost profits. Defendant's Exhibit 4, Schaubach deposition at 202. The "reasonable certainty" standard may therefore be applied to the claim at bar.

2. The letter outlined an arrangement between Todd Marine and V.I. Adventures in which the latter would arrange for tourists to come aboard the WILD THING through its contacts with ships of the Carnival Cruise Line. The arrangement scheduled tours on the WILD THING six days a week. Plaintiff's Exhibit G.

contract for regular work did not exist. The letter only evidences a potentially profitable business understanding between Todd Marine and V.I. Adventures. The vagueness of the understanding that existed is apparent from the letter itself. It states that due to the WILD THING's lack of an operating history, the arrangement should be kept "as flexible as possible." Plaintiff's Exhibit G. Plaintiff's own evidence indicates that no contract was ever in place between Todd Marine and V.I. Adventures because Todd Marine did not wish to foreclose other business opportunities. Plaintiff's Exhibit H, p. 56. The mere existence of an agreement between the parties, therefore, does not constitute a reasonable basis for calculating lost revenues, because the agreement had no legally binding force.

The next factor that plaintiff gives as a basis for computing lost revenue is that it had a reasonable basis for calculating operating costs. This factor is not relevant to the decision of the Court. Even if the plaintiff had a completely accurate method for projecting its operating costs, the matter is moot unless there is also an accurate method of forecasting incoming revenue.

The third and final factor plaintiff gives for the computation of damages is that Todd Marine had a reasonable basis for estimating ridership. After review of the relevant documents, the Court is forced to disagree with the assessment that there was a reasonable basis for estimating the number of passengers WILD THING would have served during the period it underwent repairs. First, the business understanding between Todd Marine and V.I. Adventures does not provide any basis for projecting ridership because it did not assure plaintiff of any customers at all. Although the letter provided a maximum number of passengers to potentially board WILD THING on a given day, no estimate of the minimum number of passengers to embark was given. Plaintiff's Exhibit G. In other words, there was no guarantee that any passengers would come aboard at all.

Second, the proforma that Todd Marine prepared for the purpose of estimating lost revenue is entirely speculative in nature. The proforma was, in the words of the person who prepared it, an "estimate" of revenues based on conversations with operators of similar operations in the area. Plaintiff's Exhibit K, pages 40–43. Even if plaintiff had prepared its proforma with the best information it had available to it at the time, WILD THING's lack of an operating history in its new market makes it impossible to reasonably estimate revenues. "The record of the vessel on past voyages is the best measure of the damages due to loss of use." *Todd Shipyards Corp. v. Turbine Service, Inc.*, 467 F.Supp. 1257, 1309 (E.D.La.1978), *aff'd in part, rev'd in part*, 674 F.2d 401, *reh'g denied*, 680 F.2d 1389 (5th Cir.1982), *on remand*, 592 F.Supp. 380 (E.D.La.1984), *aff'd in part, rev'd in part*, 763 F.2d 745, *reh'g denied*, 770 F.2d 164 (5th Cir.1985).[3] To engage in determining damages resulting from the loss of use of a unique tourist attraction such as the WILD THING, operating in a market the vessel had never participated in before, would be an exercise in fortune-telling not appropriate for a court. Due to the failure of plaintiff to present a reasonable basis for estimating lost revenues, it is ORDERED that defendant's Motion For Partial Summary Judgment is GRANTED.

---

**3.** Although the Court in *Todd Shipyards* awarded damages based on loss of use, that case is distinguishable from the one at bar. The vessel at issue in *Todd Shipyards* had an extensive operating history in the market where it would have sailed had it not been damaged. 467 F.Supp. 1257, 1309. Despite the vessel's history of prior voyages, the court there noted that it had difficulty determining what the market would have been like had the ship been operational. *Id.* WILD THING has no operating history whatsoever in the Virgin Islands.