PRINCESS CRUISES, INC., Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant and Third–Party Plaintiff,

v.

NORFOLK SHIPBUILDING & DRYDOCK CORPORATION, Third–Party Defendant.

Civil Action No. 2:96cv391.

United States District Court, E.D. Virginia, Norfolk Division.

Dec. 23, 1996.

Benjamin T. Riddles, II, Francis X. McCullough, Watt, Tieder & Hoffar, McLean, VA, for Plaintiff.

John Stephen Wilson, Willcox & Savage, P.C., Norfolk, VA, Geoffrey Footner Birkhead, Edward James Powers, Vendeventer, Black, Meredith & Martin, Norfolk, VA, for Defendant.

## OPINION AND ORDER

MORGAN, District Judge.

On April 22, 1996, Princess Cruises, Inc. ("Princess"), filed a Four–Count Complaint against General Electric Company ("GE") alleging: (1) breach of contract; (2) breach of express warranty; (3) breach of implied maritime warranty; and (4) negligence. All claims arise from a contract obligating GE to inspect turbines, make recommendations and perform other related services on Princess's ship, the S.S. Sky Princess.

Pending before the Court is GE's Motion for Summary Judgment as to all claims and Princess's Motion for Partial Summary Judgment as to the contractual claims. On November 15, 1996, the Court heard arguments concerning Princess's negligence claim and GRANTED GE's Motion for Summary Judgment as to that claim only, postponing arguments on all contractual claims until November 22, 1996. At the conclusion of the November 22, 1996, hearing, the Court **DENIED** GE's Motion for Summary Judgment as to all other claims and **DENIED** Princess's Motion for Partial Summary Judgment. This opinion will further explain the Court's reasoning for these respective rulings.

### I. Facts.

Princess's cruise ship, the S.S. Sky Princess (the "Ship") was scheduled for routine inspection services and repairs in December 1994, at Norfolk Shipbuilding & Drydock Corporation's ("Norshipco"), facility in Portsmouth, Virginia. Princess requested that GE, the original manufacturer of the Ship's main turbines, prepare an estimate for the inspection work to be performed. On July 13, 1994, GE prepared a Rough Order of Magnitude ("ROM") for the scheduled inspection and services. The parties agree that the ROM was not a contract, but merely an estimate for informational purposes.

Around the end of September 1994, Richard Neary, GE's Proposal Engineer, requested that Michael Stephen–McRae, Princess's representative, provide some assurance that GE would be awarded the inspection contract. In response, Princess issued a purchase order which GE received on October 24, 1994. The purchase order included a proposed contract price of $260,000.00 and contained a brief description of the work to be performed. The reverse side of the purchase order contained a list of Princess's terms and conditions. These terms and conditions indicated that the purchase order was

intended to be an offer and provided that: (1) the purchase order could be accepted through either acknowledgment or performance; (2) the terms and conditions could not be changed unilaterally; and (3) the Seller would provide a warranty of workmanlike quality and fitness for the use intended.

On October 24, 1994, the same day that GE received the purchase order, GE telefaxed a Fixed Price Quotation ("Quotation One") to Princess. Quotation One provided a more detailed work description than the purchase order, a materials list, an offering price of $201,888.00, and GE's own terms and conditions. Later that same day, GE reviewed Princess's purchase order and discovered that it requested work not contemplated by GE when calculating the offering price in Quotation One. GE notified Princess of the same, and on October 28, 1994, telefaxed a Final Quotation ("Quotation Two") to Princess, offering to provide all the requested services for $231,925.00, approximately $30,000.00 less than the offering price of Princess's Purchase Order, but approximately $30,000.00 more than GE's Quotation One. Attached to both Quotation One and Quotation Two was a copy of GE's own terms and conditions. These terms and conditions purported to: (1) reject any terms and conditions set forth in a Customer's purchase order; (2) reject any liquidated damages; (3) limit GE's liability to the repair or replacement of any defective goods or damaged equipment resulting from defective service, exclusive of all written, oral, implied or statutory warranties; (4) limit GE's liability on any claims to not more than the greater of either five thousand dollars ($5,000.00) or the contract price; and (5) disclaim any liability for consequential damages, loss profits or lost revenue.

Neither Princess nor GE ever indicated any written or verbal acceptance of the other party's terms and conditions. On November 1, 1994, GE did send a letter to Princess acknowledging receipt of their purchase order and expressing GE's intent to perform the services. However, the letter also restated GE's $231,925.00 offering price from Quotation Two, and specified that GE's terms and conditions, attached to the letter, were to govern the contract.

In December 1994, the Ship arrived at Norshipco's facilities in Portsmouth, Virginia. While performing the inspection and repairs, GE noted surface rust on the rotor and recommended that it be taken ashore to Norshipco for fly ash blast cleaning and balancing. Allegedly, Norshipco unevenly and excessively removed good metal from the rotor during the fly ash blasting, and as a result the rotor was no longer properly balanced. GE allegedly reinstalled new balance weights matching original specification, rather than properly testing and balancing the rotor. Upon departing Norshipco on December 18, 1994, the Ship experienced excessive vibration, allegedly from the unbalanced rotor, and was forced to return to port on December 19, 1994. GE shipped the rotor to its facility in Richmond, Virginia for inspection, blast cleaning and balancing. The rotor was reinstalled and other services, intended to eliminate the vibration, were completed by December 28, 1994. Nevertheless, Princess was forced to cancel a ten-day Christmas cruise as a result of the delay.

Princess alleges that the Ship continued to experience problems as a result of GE's failure to properly perform its obligations under the survey and service contract. Specifically, excessive vibration, high temperatures, and damage to the rotor shaft, bearings, and labyrinth, forced additional repairs and the cancellation of a ten-day Easter cruise.

## II. Maritime Law and the Standard for Summary Judgment.

Maritime law governs any contract action which primarily makes reference to maritime services or transactions. *Todd Marine Enterprises, Inc. v. Carter Machinery Co., Inc.*, 898 F.Supp. 341, 343 (E.D.Va. 1995). Thus, all parties agree and the Court **FINDS** that maritime substantive law governs this case.

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by plaintiff to rebut defendants' motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

### III. Princess's Negligence Claim and The Economic Loss Doctrine.

■ In Count Four of its Complaint Princess alleges that GE negligently performed the contracted services, and negligently advised Princess regarding the problems the Ship experienced after being refitted in December 1994. In so doing, Princess alleges that GE breached a tort duty to act reasonably and exercise due care. The Court FINDS that the facts in record, viewed in a light most favorable to the Plaintiff, fail to state a tort cause of action because Princess has suffered only economic losses. Accordingly, GE's Motion for Summary Judgment as to the negligence claim is **GRANTED.**

In *East River S.S. Corp v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the Supreme Court held that in commercial transactions under gener-

al maritime law, no product liability claim lies, whether stated in negligence or strict liability, where the party alleges purely economic losses. *Id.* at 871, 106 S.Ct. at 2302. The Court reasoned:

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

*Id.* at 872–73, 106 S.Ct. at 2303 (citations omitted). The economic loss doctrine has since been applied to contracts for repair services, *Nathaniel Shipping, Inc. v. General Elec. Co.,* 932 F.2d 366 (5th Cir.1991), and contracts for services rendered as part of the construction or manufacture of products. *See Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.,* 866 F.2d 752 (5th Cir.1989), *cert. denied, Employers Ins. Of Wausau v. Avondale Shipyards, Inc.,* 493 U.S. 820, 110 S.Ct. 77, 107 L.Ed.2d 43 (1989).

Princess maintains that the economic loss doctrine should not apply to this case because GE breached a tort duty independent of the contract. Specifically, Princess alleges that GE made certain negligent misrepresentations, relied upon by Princess, resulting in the alleged damages.

In *International Ore & Fertilizer Corp. v. SGS Control Serv., Inc.,* 38 F.3d 1279, 1284 (2nd Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995), the United States Court of Appeals for the Second Circuit, specifically rejected this argument.[1] In that case, the plaintiff, an international trader of fertilizer products, contracted with the defendant to inspect and certify that the hold of a ship chartered to carry its

---

**1.** The state law cases relied upon by Princess are not persuasive. Where maritime law and state law differ courts look to the maritime law. *See Employers Ins. Of Wausau,* 866 F.2d at n. 28

(refusing to apply New York economic loss principles that differed from those expressed in *East River*).

fertilizer was clean, dry and suitable for its purposes. *Id.* at 1281. The defendant failed to properly inspect the ship's hold, but nevertheless certified that the hold was clean and suitable. *Id.* In fact, some of the ship's prior cargo of barley remained in the hold and contaminated the plaintiff's fertilizer, rendering it unmarketable. *Id.* at 1282. The Second Circuit reversed the district court's holding that the defendant's certification was actionable in tort as a negligent misrepresentation. *Id.* at 1283.

> We agree with [defendant] that *East River,* ... compel[s] the holding that any duty owed by [defendant] to [plaintiff] must be derived from the contract and that the negligent misrepresentation claim, which sounds in tort and entails a duty independent of contract, should have been dismissed.

*Id.* at 1284. (citations omitted).

This Court finds that it also is compelled by the reasoning, if not the specific holding of *East River.* As the Court explained in *East River,* contract law and tort law address fundamentally different concerns.

> When a person is injured, the cost of the injury and the loss of time or health may be an overwhelming misfortune, and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service.... Such damage[s] mean simply that the product has not met the customers's expectations, or, in other words, that the customer has received insufficient product value.

*Id.* (citations omitted). Almost any contract breach can be conceived of in terms of a negligent or intentional tort claim. When, through the negligence of one of the parties, the subject of the transaction physically injures a person, or damages the property of someone not a party to the contract, the law of tort properly provides a cause of action. But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cher-

ished virtue of contract law, the power of the parties to allocate the risks of their own transactions.

Princess maintains that the holding in *East River* should be limited to cases in which the alleged damage does not extend beyond the subject of the transaction. Princess distinguishes the facts in this case from those in *East River,* where only the "product itself" was damaged, because Princess alleges damages to the Ship beyond the port high pressure turbine, the subject of the contract. Such damages, if proven, do not justify abandoning contract principles in favor of tort principles where the alleged wrong is so clearly contractual in nature. Assuming that the ship suffered damage beyond the turbine, Princess could recover for such damages under a breach of contract theory, provided that the parties did not otherwise allocate the risks or limit their liabilities. In *International Ore,* 38 F.3d at 1281, while the court refused to allow the tort claim to proceed, it did impose contract damages of $356,533.14 despite the fact that the defendant was paid only $150.00 dollars for the inspection contract. The court reasoned that the parties, "sophisticated repeat players in a competitive market," were fully aware of the potential consequences of a breach of contract and could allocate the risks, insure against them, and set the contract price accordingly. *Id.* at 1284.

The same reasoning applies to the case at hand. The parties are sophisticated corporations familiar with the type of services rendered, and the consequences of a mechanical failure likely to result from a failure to perform the contract as promised. The parties were free to allocate the risks, insure against potential losses, and adjust the contract price as they deemed most wise. This Court sees "no reason to extricate the parties from their bargain." *East River,* 476 U.S. at 875, 106 S.Ct. at 2304.

Princess's final argument is that GE should be held liable for exposing persons to the theoretical risk that the unbalanced rotor could have locked up, possibly resulting in an explosion which might have injured nearby crew members. Although this "degree of risk position" has been adopted by several

state courts, which permit tort actions for economic losses where "the defective product creates a situation potentially dangerous to persons or other property," the East River Court rejected it. *Id.* at 869, 106 S.Ct. at 2301. The Court reasoned that this position is "too indeterminate to enable manufacturers to easily structure their business behavior." *Id.* Moreover, speculation regarding these potential risks is unnecessary. If persons are in fact injured, the economic loss doctrine does not apply and the injured party can recover on a tort cause of action. However, where a party to a commercial transaction, suffers only economic damages, "[e]ven when the harm ... occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.* at 870, 106 S.Ct. at 2302 (citations omitted). Accordingly, Princess must recover, if at all, on a contract cause of action.

### IV. The Contract Claims.

 Princess and GE agree that they had a contract obligating GE to perform the services rendered during the December 1994 refit. The parties disagree as to whether the Princess purchase order, or GE's Quotation Two is the governing document, and more importantly, which, if any, terms and conditions apply.

The parties have presented no conclusive evidence that either party gave written or verbal acceptance of the other party's offer, or their terms and conditions. In such cases, where the manifestations of a bargained-for exchange must be deciphered from protracted negotiations involving an exchange of offers, letters, telefaxes, acts, and spoken words, the dispute is quintessentially about the respective parties' state of mind. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414–15 (4th Cir.1979). These states of mind, and the conflicting interpretations that can be drawn from their manifestations, present genuine disputes as to material issues of fact that preclude summary judgment. *Id.* While the Court FINDS that summary judgment is not appropriate, this may not necessarily be an issue for the jury. If, at the conclusion of the presentation of evidence at trial, the parties' intentions as to the contract terms have become so unequivocally clear that no genuine issue of fact remains, the Court may find these terms as a matter of law.

### V. Conclusion.

Almost every breach of contract involves actions or inactions that can be conceived of as a negligent or intentional tort. If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law. This Court believes that if tort law and contract law are to fulfill their distinctive purposes, they must be distinguished where it is possible to do so. The economic loss doctrine serves as a basis for such a distinction. This Court must follow the Supreme Court's effort in *East River* to prevent contract law from drowning in a sea of tort.

For the aforementioned reasons, GE's Motion for Summary Judgment is **GRANTED** as to the negligence claim in Count Four and **DENIED** as to all other Counts. Similarly, Princess's Motion for Partial Summary Judgment is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to counsel for all parties.

It is so **ORDERED**.