**MAERSK LINE LIMITED, Plaintiff,**

v.

**CARE and ADM, Inc., d/b/a ADM/Farmland, Defendants.**

**No. CIV.A. 2:03CV81.**

United States District Court, E.D. Virginia, Norfolk Division.

July 8, 2003.

Lawrence G. Cohen, Katharina K. Brekke, Vandeventer Black LLP, Norfolk, VA, Counsel for Plaintiff.

Philip N. Davey, R. Arthur Jett, Jr., Davey & Brogan PC, Norfolk, VA, Counsel for Defendant Care.

James L. Chapman, IV, William R. Snow, Crenshaw, Ware & Martin PLC, Norfolk, VA, Counsel for Defendant Adm, Inc.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on three motions: a motion by CARE to dismiss the original complaint, a motion by CARE to dismiss the amended complaint, and a motion by ADM, Inc. ("ADM") to dismiss the amended complaint. All three motions are pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, CARE's motions are **GRANTED** in part and **DENIED** in part, and ADM's motion is **GRANTED**.

### I. Factual and Procedural History

On January 29, 2003, Maersk Line, Limited ("Maersk") filed a complaint asserting claims of negligence against ADM and negligence and breach of contract against CARE, and seeking recovery for damages sustained as a result of delay and fumigation costs to rid its cargo of insect infestation. Maersk then filed an amended complaint on March 13, 2003, asserting additional counts against ADM. CARE filed a motion to dismiss the original complaint on March 14, 2003, and the appropriate response and reply have been received. On March 20, 2003, CARE filed a motion to dismiss the amended complaint. Maersk responded on March 31, 2003. CARE has not replied; and the time for a reply has passed. On March 27, 2003, ADM filed a motion to dismiss the amended complaint, and the appropriate response and reply have been received for that motion. Therefore, the three motions are ripe for review.

On December 6, 2001, Maersk and CARE entered into a voyage charter party for the MAERSK ALASKA, with Maersk as owner of the vessel and CARE as charterer, shipper, and consignee of the cargo. CARE chartered the vessel to ship 3,000 metric tons of wheat from Galveston, Texas, to Puerto Cortes, Honduras. On December 31, 2001, the Federal Grain Inspection Service inspected the vessel holds prior to the loading of the grain and passed them as free of insect infestation and suitable for maintaining the quality of the grain during shipping. On January 2, 2002, the National Cargo Bureau also inspected the holds and passed them for the loading of grain in bulk.

CARE contracted with ADM to supply the grain for shipment. The grain was loaded on January 6–7, 2002, at the ADM elevator at Pier 32 in Galveston, Texas. On January 8, 2002, the cargo was fumigated by Pestcon Systems prior to departure of the vessel. The vessel then departed from Galveston, arriving in Puerto Cortes on January 10, 2002. Upon inspec-

tion, it was discovered that the grain was infested with live insects. Because of the infestation, the vessel was quarantined for seventy-two hours for additional fumigation. Maersk seeks damages for the delay and for the costs of the fumigation, in the amount of $95,524.34.

## II. Standard of Review

A complaint should not be dismissed for failure to state a claim pursuant to Rule 12(b)(6) unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir.1995). A court reviewing such a motion must accept the complaint's factual allegations as true and view the allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir.2001).

As a general rule, in the context of a motion to dismiss under Rule 12(b), the court may not consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir.1985). However, the court may consider dispositive documents that are either attached to, or referenced in, the complaint. *Moore v. Flagstar Bank, et al.*, 6 F.Supp.2d 496 (E.D.Va.1997) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)).[1]

## III. Analysis

### A. CARE's Motions to Dismiss

CARE has filed two motions to dismiss. The first, filed the day after the amended complaint, is a motion to dismiss the original complaint. The second is a motion to dismiss the amended complaint. The motions are, however, identical, as the amendments made by Maersk did not substantively affect the counts alleged against CARE. Therefore, the motions will be considered as one. Maersk asserts two counts against CARE in its complaint, one count alleging negligence, and the second count alleging breach of contract. CARE addresses the counts separately in its motion to dismiss.

### 1. Count One—Negligence

■ CARE argues that because it entered into the voyage charter party with Maersk, which fully covered the responsibilities of the parties as to economic loss, any such loss suffered by Maersk is limited to a contract cause of action; therefore, Count One of the complaint should be dismissed. Maersk counters that CARE breached its duty of care when it failed to provide a safe cargo to the vessel and that it should answer in tort as well as in contract.

In *East River Steamship Corp. v. Transamerica Delaval*, the Supreme Court held that no product liability claim lies, whether under a negligence or strict liability action, in commercial transactions under general maritime law where the party claims solely economic losses. 476 U.S. 858, 871, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The court explained that both the nature of such transaction and the rela-

---

**1.** *See Papasan v. Allain*, 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (noting that the public record could be considered on motion to dismiss); *Anheuser–Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir.1995) (explaining that consideration of legislative history did not require conversion to summary judgment), *vacated on other grounds*, 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996).

tionship of the parties involved guided its decision: "Contract law ... is well suited to commercial controversies ... because the parties may set the terms of their own agreements.... Since a commercial situation generally does not involve large disparities in bargaining power, ... we see no reason to intrude into the parties' allocation of the risk." *Id.* at 872–73, 106 S.Ct. 2295.

Though the Supreme Court specifically declined to decide whether a tort cause of action could ever be stated in admiralty law, *id.* at 871 n. 6, 106 S.Ct. 2295, other courts have used the reasoning set out by the Supreme Court in further limiting claims for purely economic loss in admiralty cases. The Second Circuit applied the reasoning of *East River* when it denied a negligent misrepresentation claim in *International Ore & Fertilizer Corp. v. SGS Control Servs.*, 38 F.3d 1279 (2d Cir.1994). The parties had a contract under which defendant inspected the holds of the ship and certified them as ready for loading. *Id.* at 1281–82. The holds were loaded with fertilizer for shipping; however, upon arrival at the destination port, it was found that the fertilizer was contaminated with barley which had been lodged behind stringers and hatch covers in the holds. *Id.* Plaintiff sued defendant, alleging breach of contract, breach of warranty, negligence, and negligent misrepresentation. *Id.* The Second Circuit, citing *East River*, held that any duty owed to the plaintiff had to be derived from the contract and that the tort claim of negligent misrepresentation should have been dismissed, as defendant's sole legal duty arose from the contract. *Id.* at 1284.

In *Princess Cruises, Inc. v. General Electric Co.*, the court denied plaintiff's claim for negligent performance of a contract, where plaintiff suffered only economic losses. 950 F.Supp. 151, 154 (E.D.Va.1996), *rev'd on other grounds*, 143 F.3d 828 (4th Cir.1998). Plaintiff attempted to take its case from under the economic loss doctrine by arguing that defendant breached a tort duty independent of the contract; specifically, plaintiff argued that defendant made negligent misrepresentations upon which it relied. *Id.* The court in *Princess Cruises* rebuffed plaintiff's attempt, citing to the holding in *International Ore* that any duty owed arose from the contract. 950 F.Supp. at 154–55 (citing *International Ore*, 38 F.3d at 1284). Utilizing the reasoning in *East River*, the court in *Princess Cruises* took that logic a step further, explaining the necessity for distinguishing between claims sounding in contract and those sounding in tort:

> Almost any contract breach can be conceived of in terms of a negligent or intentional tort claim.... But to permit a party to a broken contract to proceed in tort where only economic losses are alleged would eviscerate the most cherished virtue of contract law, the power of the parties to allocate the risks of their own transactions.

950 F.Supp. at 155. The parties to the contract, "sophisticated corporations familiar with the type of services rendered, and the consequences of ... a failure to perform the contract as promised" were, as the court explained, "free to allocate the risks, insure against potential losses, and adjust the contract price as they deemed most wise." *Id.*

Maersk attempts to argue that the cases above are not applicable, as they can be distinguished on the facts. However, it is not a set of parallel facts that demands the results reached by the courts in the above cited cases; it is the reasoning of the independent purposes of contract and tort law that requires such results. The principles set out in the cases above illuminate the issues now before the court. In the matter at hand, CARE and Maersk were

sophisticated parties, very familiar with the transactions in which they engaged. There is no disparity in bargaining power. The voyage charter party exemplifies the sophistication of the parties, for it addresses the very issues central to the parties' dispute.

■ Echoing the arguments rejected by the courts in *Princess Cruises* and *International Ore,* Maersk asserts that CARE should be liable in tort, because it breached a duty independent of the contract.[2] However, a reading of the two causes of action asserted by Maersk in its complaint refutes this assertion. The causes are almost identical. In its response to CARE's motion to dismiss, Maersk argues its tort claim based on CARE's breach of the duty to provide a safe cargo. (Maersk Line Ltd. Br. Opp'n CARE Mot. Dismiss at 6.) Yet in the section of the memorandum arguing breach of contract, Maersk again cites to the same duty to provide a safe cargo, effectively admitting that there is no distinction in the duty alleged to have been breached. (*Id.* at 9.) If there is a breach of this duty, Maersk can seek recovery under the contract. Any other result further dilutes the role of contract law in our legal system. As the court warned in *Princess Cruises,* "If left unchecked, the incessant tide of tort law would erode and eventually swallow contract law." 950 F.Supp. at 156. This court agrees with the court in *Princess Cruises* that "[t]he economic loss doctrine serves as a basis" for distinguishing between claims sounding in tort and those sounding in contract. *Id.* Therefore, CARE's motion to dismiss is granted as to Count One of Maersk's complaint alleging negligence against CARE.

### 2. Count Two—Contract

In its motion to dismiss Count Two of Maersk's complaint, CARE asserts that under the terms of the voyage charter party, Maersk is responsible for any fumigation costs and any delay associated therewith, thus eliminating any claim against CARE.

■ The threshold to survive a motion to dismiss is a low one. As explained above, the court will not dismiss the complaint unless it appears to a certainty that Maersk cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir. 1995). In its complaint, Maersk asserts the contract with CARE, alleges a breach of that contract, and argues its damages. CARE's contention is simply that the contract, by its terms, allows no recourse to CARE for the damages alleged. However, Maersk correctly points to portions of the contract which, if the right set of facts can be proven, could result in the liability of CARE for the infestation of the grain and the damages therein resulting. Furthermore, the nature of the relationship of the parties itself—the bond of contract so revered under the law—implies duties that must be considered where, as here, there are damages, born of that relationship, suffered by one of the contracting parties. Therefore, CARE's motion to dismiss must be denied as to Count Two of the complaint.

### B. ADM's Motion to Dismiss

ADM moves to dismiss Counts Three, Four, and Five of the amended complaint on the grounds that they fail to state

---

**2.** As the court addresses below, *see infra* Section B.1, pursuit of a tort claim in the absence of a contract is a difficult proposition in and of itself. Therefore, even if there existed a duty independent of the contract, Maersk would be struggling against the currents of the law in seeking to recover, because it still seeks recovery for purely economic losses.

claims for which relief can be granted. Count Three alleges that ADM negligently failed to fumigate the grain properly. Count Four asserts that Maersk is a third-party beneficiary of the contract between ADM and CARE and seeks recovery against ADM for breach of that contract. Count Five alleges breach of a duty of workmanlike performance based on Maersk's asserted status as a third-party beneficiary of the contract between ADM and CARE.

### 1. Count Three—Negligence

In its complaint, Maersk argues that ADM, as the grain supplier, had a duty to properly fumigate the grain, and that it negligently failed in its duty, rendering it liable to Maersk for the damages at issue. ADM counters that recovery for claims of purely economic loss are limited to those in privity. As Maersk had no contract with ADM regarding the grain, ADM argues that this cause of action cannot be sustained in tort.

■ The economic loss doctrine teaches that, as the purpose of tort law is to provide an avenue for recompense for a physical injury, recovery for pure economic loss is rarely available. *See Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 309, 48 S.Ct. 134, 72 L.Ed. 290 (1927); *Adams v. Star Enter.,* 51 F.3d 417, 424–25 (4th Cir.1995); *Louisiana ex rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1021–22 (5th Cir.1985) (finding that claims for economic loss unaccompanied by physical damage to a proprietary interest are not recoverable

in admiralty). This general rule is particularly true in commercial situations, which abound in admiralty law, where the relationships between the parties are typically governed by a contract. Maersk attempts two arguments in pursuing its negligence claim against ADM. The first alleges that privity exists between Maersk and ADM based on the contract for dockage space and argues for tort recovery based on that privity. The second argument is a simple negligence claim, with Maersk claiming that an exception to the general rule is appropriate, as it had a proprietary interest in the cargo of grain.

■ As to the first argument, the privity alleged is based on a contract completely unrelated to the fumigation or contamination of the grain; furthermore, if Maersk has such a contract, the duties owed it by ADM spring from that contract, and the appropriate suit for damage recovery is a suit for breach of contract. As to the second argument, though there are exceptions,[3] the general rule is that there is no recovery for purely economic loss in admiralty. Simply put, Maersk cannot pursue its claim for purely economic damages against ADM in tort. Such an allowance is contrary to the purpose of tort law, which "is designed to protect the safety of persons and property," *Crawford v. Deutsche Bank AG,* 244 F.Supp.2d 615, 617 (E.D.Va.2003); contract law, which "seeks to protect bargained-for expectations," *id.,* provides the appropriate avenue for recovery of economic loss. The laws of contract and insurance offer ample oppor-

---

3. *See, e.g., McLean Contracting Co. v. Waterman Steamship Corp.,* 131 F.Supp.2d 817 (E.D.Va.2001). The *McLean* exception is inapplicable here, as it was based on the facts in that case, which do not correspond at all to those in the case at hand. *McLean* is an allision case and therefore distinguishable from the case before the court. Admiralty law has its share of exceptions, depending upon the nature of the situation. These in-clude exceptions for claims brought by fishermen, the "favorites of admiralty," *see Union Oil Co. v. Oppen,* 501 F.2d 558, 567 (9th Cir.1974), and claims for economic losses that are intentionally caused, *see Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023, 1025 (5th Cir.1978). The court sees no reason to depart from the general rule in the instant case.

tunity for sophisticated commercial parties to cover contingencies that might occur. In the case before the court, for example, Maersk has a contract with CARE for shipment of the grain in question. CARE, in turn, contracted with ADM to provide the grain. Maersk has a potential avenue of recovery through its contract. CARE, in turn, is free to pursue an action for breach against ADM, if it so desires.

### 2. *Count Four—Third–Party Beneficiary Breach of Contract*

In Count Four, Maersk alleges that it is a third-party beneficiary to the contract to supply the grain between ADM and CARE. Based on its status as third-party beneficiary, Maersk asserts the right to sue ADM for breach of that contract. ADM argues that Maersk does not have standing to sue for breach of the contract, as it was not an intended beneficiary.

 The Restatement (Second) of Contracts, section 302 (1981), gives the following description of intended beneficiaries:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

The Restatement provides that only intended beneficiaries of a contract may enforce against the promisor a duty or right under the contract. *Id.* at §§ 304 n8. CARE contracted with Maersk to transport grain, which it received from ADM. Maersk argues that in supplying and fumigating the cargo, ADM was acting as an agent of CARE and performing duties for the benefit of the vessel, since the voyage charter party made the grain supplier responsible for the loading and fumigation of the vessel. (*See* Charter Party at ¶ 25.) First, the contract between Maersk and CARE does not bind ADM in any way, as it was not a party to the contract. Second, Maersk's only contract with ADM was the lease for dockage previously discussed. Finally, even under the most liberal analysis, Maersk cannot be said to have been an intended beneficiary of the ADM/CARE contract. At best, Maersk stands as an incidental beneficiary.

 Maersk's analysis would create almost limitless third-party beneficiaries in commercial situations, because any party standing to profit from the performance of another contract could claim intended beneficiary status and move to enforce that contract against the promisor. The purpose of the test as stated in the Restatement is to assure that only a party whose benefit was contemplated, and therefore intended, at the time of the contract can assert intended third-party beneficiary status. Maersk, in its response, begs time to conduct discovery "to establish the third party beneficiary relationship through contracts, documents, and witnesses of Maersk and ADM." (Maersk Br. Opp'n ADM Mot. Dismiss Amended Complaint at 10.) Such a fishing expedition is unnecessary, however, because the nature of the commercial contract at issue here is such that this court cannot find Maersk to be an intended third-party beneficiary. Neither of the criteria set out in the Restatement are met in this contractual relationship, and no amount of discovery will change that analysis. It defies logic to imagine that, in contracting with ADM to purchase grain for shipment, the intention of CARE was to provide a benefit to the vessel that it hired to ship the grain. Maersk's benefit was entirely incidental to the ultimate goal of CARE—to deliver grain to Honduras. As it is not an intended third-party

beneficiary, Maersk has no standing to sue for breach of the contract between ADM and CARE. Therefore, the motion to dismiss must be granted as to Count Four.

### 3. Count Five—Breach of Warranty of Workmanlike Performance

In Count Five, Maersk alleges that ADM breached a duty of workmanlike performance that it owed Maersk, a third-party beneficiary to the contract between CARE and ADM. Maersk further argues that this duty extends to shipowners who are not in privity. ADM argues that the duty of workmanlike performance in admiralty is applicable only to allow recovery against stevedores, and then only for physical injuries resulting from the negligence of the stevedores. Maersk counters that the Supreme Court has extended the duty to other marine service contracts, citing *Royal Embassy v. Ioannis Martinos,* 1986 AMC 769, 781 (E.D.N.C.1984) ("The warranty of workmanlike service has been extended to other areas of admiralty. *See Fairmont Ship. Corp. v. Chevron Internat'l. Oil Co.,* 1975 AMC 261, 511 F.2d 1252 (2d Cir.1975) (applicable to towage contracts); *Tebbs v. Baker-Whiteley Towing Co.,* 1969 AMC 275, 407 F.2d 1055 (4th Cir.1969) (towage); *H & H Ship Service Co. v. Weyerhaeuser Line,* 1967 AMC 2483, 382 F.2d 711 (9th Cir.1967) (ship repairs); *David Crystal, Inc. v. Cunard Steamship Co.,* 1965 AMC 39, 339 F.2d 295 (2d Cir.1964) (misdelivery of goods).").

■ There are two avenues through which a warranty of workmanlike performance in admiralty can be pursued. First, the warranty can be a contract warranty, binding as to parties in privity to the contract and as to third-party beneficiaries. Schoenbaum, Admiralty and Maritime Law, 3d ed., § 5.8 at 206–08 (2001). Second, the warranty can arise on an implied indemnity theory. *Id.* at 209–13. Typically, the doctrine of implied indemnity, which originated in *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), protects against actions causing unseaworthiness:

> Therefore, we find the crucial elements of *Ryan* to be as follows: a shipowner, relying on the expertise of another party (the contractor), enters into a contract whereby the contractor agrees to perform services without supervision or control by the shipowner; the improper, unsafe or incompetent execution of such services would foreseeably render the vessel unseaworthy or bring into play a pre-existing unseaworthy condition; and the shipowner would thereby be exposed to liability regardless of fault.

*Fairmont,* 511 F.2d at 1258.

■ In the case at bar, the court has already stated that Maersk cannot claim status as a third-party beneficiary to the contract between ADM and CARE. Therefore, there can be no pursuit of the warranty of workmanlike performance based on that contract. As to the implied indemnity theory, the case at hand does not present facts that bring it within the ambit of the *Ryan* warranty. There is no contention that the actions of ADM caused the vessel MAERSK ALASKA to become unseaworthy. Furthermore, a review of the cases cited by Maersk in arguing that the doctrine has been extended beyond stevedores quickly reveals that the injuries at issue are physical injuries; Maersk provides no cases in which the courts have allowed recovery under the *Ryan* warranty for purely economic loss. Indeed, the court found no cases within the Fourth Circuit that would support application of the warranty to allow recovery for purely economic loss, though at least one other jurisdiction has found that such recovery is not barred by the economic loss rule. *See Ignazio Messina & C.S.P.A. v. Ocean Repair Serv. Co.,* 1993 WL 427443, **3–4,

1993 U.S. Dist. LEXIS 14626, *13–*15 (S.D.N.Y. October 19, 1993). However, the court in *Ignzaio Messina* conditioned the warranty of workmanlike performance on the existence of a third-party beneficiary relationship, *see id.,* 1993 WL 427443, *5, 1993 U.S. Dist. LEXIS 14626, at *17, a factor not present in the case before the court.

Furthermore, the nature of the *Ryan* warranty is such that it does not fit within the warranty relationship as interpreted by the Supreme Court in *East River:* "[c]ontract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case *because the parties may set the terms of their own agreements." East River,* 476 U.S. at 872–73, 106 S.Ct. 2295 (emphasis added). The *Ryan* warranty is an *implied* warranty, and the parties in the instant matter, because they are not bound by contract, did not have the opportunity to negotiate the terms and responsibilities of their relationship. Therefore, this court finds that in the matter at hand the implied warranty of workmanlike performance cannot be pursued to recover purely economic loss, and the motion to dismiss must be granted as to Count Five.

### IV. Conclusion

For the reasons stated above, the court **GRANTS** CARE's motion to dismiss as to Count One and **DENIES** CARE's motion to dismiss as to Count Two. The court **GRANTS** ADM's motion to dismiss in its entirety, and Counts Three, Four, and Five are thereby **DISMISSED.**

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**