Present: Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

BARRY WM. LEVINE, ET AL.

v.  Record No. 941719     OPINION BY JUSTICE LEROY R. HASSELL
                                    September 15, 1995
SELECTIVE INSURANCE COMPANY
OF AMERICA

FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
William Shore Robertson, Judge

In this appeal, we consider whether property owners, who are not parties to an insurance contract, have pled a cause of action as third-party beneficiaries against an insurer for breach of an implied covenant of good faith and fair dealing.

I.

This case was decided on the defendant's motion for summary judgment; therefore, we must adopt the facts and inferences from those facts that are most favorable to the non-moving party, unless those inferences are strained, forced, or contrary to reason. Renner v. Stafford, 245 Va. 351, 353, 429 S.E.2d 218, 220 (1993).

Plaintiffs, Barry W. Levine and Patricia Levine, executed a contract with Henry Elmore to construct a house upon their property in Rappahannock County. The construction contract required that Elmore obtain construction hazard insurance, which would provide coverage for loss of materials and personal injuries on the job site, with the plaintiffs named as loss payees.

Elmore procured construction hazard insurance from Selective

---

[1]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

Insurance Company of America through its agent, Hughes Insurance Company.  Although the Levines were not shown as loss payees on the policy, "all parties expressly understood that the beneficiaries of such Policy were the Levines.  Elmore has never had and asserts no right or title to the proceeds from the Policy except as trustee for the Levines."

During construction of the house, strong winds caused the partially completed house to collapse.  The house's foundation, floor joists, and sub-floor were damaged, but not destroyed, by the windstorm.  Hughes Insurance Company was notified of the damage on the same day, and a formal claim was timely submitted to Selective, which dispatched a claim adjuster to evaluate the loss.  Selective's claim adjuster was advised of the urgency of prompt processing and payment of the claim so that the plaintiffs and Elmore could use the funds to preserve the foundation, floor joists, and sub-flooring.

Selective "dallied in reviewing and paying the claim," and it asked "the Levines and Elmore to provide certain information regarding the loss that Selective Insurance already possessed, and it otherwise delayed paying the claim."  Selective refused to pay the claim despite "repeated requests by the Levines and Elmore and repeated warnings that Selective was exposing the remaining structure to additional collapse."  Elmore ceased construction of the house and, subsequently, a substantial portion of the remaining foundation collapsed.

The plaintiffs filed a second claim with Selective for the additional damage.  After protracted negotiations, Selective acknowledged coverage of the subject risk and made a partial

payment of $25,000 for the first damage claim only.  A draft of $25,000 was made payable to Elmore and Mr. Levine.[2]  Three months later, Selective issued a second draft in the amount of $87,000, payable to Elmore and Mr. Levine as full payment for the first damage claim only.  Selective has refused to pay for any damages associated with the second collapse and has failed to provide any legal basis for its decision.

II.

The plaintiffs argue that the trial court erred in granting summary judgment.  The plaintiffs contend that they are third-party beneficiaries to the contract between Selective and Elmore.  Selective argues that the plaintiffs are not third-party beneficiaries to the insurance contract, and, therefore, Selective owes no contractual duty to them.  We disagree with Selective.

It is well established in this Commonwealth that under certain circumstances, a party may sue to enforce the terms of a contract even though he is not a party to the contract.  "[I]n contracts not under seal, it has been held, for two centuries or more, that any one for whose benefit the contract was made may sue upon it."  Thacker v. Hubard, 122 Va. 379, 387, 94 S.E. 929, 931 (1918).  This rule was codified in the 1849 Code of Virginia, ch. 116, § 2.  Thacker, 122 Va. at 390, 94 S.E. at 931-32.  The current successor to that statute, Code § 55-22, states:

> An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it

---

[2]The motion for judgment does not state why Mrs. Levine was not a payee on the draft.

is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.  In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

"The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain."  Copenhaver v. Rogers, 238 Va. 361, 367, 384 S.E.2d 593, 596 (1989); accord, Cobert v. Home Owners Warranty Corp., 239 Va. 460, 466, 391 S.E.2d 263, 266 (1990); Forbes v. Schaefer, 226 Va. 391, 401, 310 S.E.2d 457, 463 (1983);  Richmond Center v. Jackson Co., 220 Va. 135, 142, 255 S.E.2d 518, 523 (1979); Valley Landscape Co. v. Rolland, 218 Va. 257, 259-60, 237 S.E.2d 120, 122 (1977).  We have enforced third-party beneficiary contracts when "[t]he third party . . . show[s] that the parties to the contract clearly and definitely intended it to confer a benefit upon him."  Ward v. Ernst & Young, 246 Va. 317, 330, 435 S.E.2d 628, 634 (1993) (quoting Professional Realty v. Bender, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976)).

We hold that the plaintiffs pled sufficient facts in their motion for judgment to support their claim that they are third-party beneficiaries to the contract between Elmore and Selective.  The contract insures the plaintiffs' property, and they alleged in their motion that:  "all parties expressly understood that the beneficiaries of such [insurance contract] were the Levines;"  "Selective Insurance, at all relevant times, has had actual notice of the Levines' status as a third party beneficiary and

ultimate payee under the Policy;" and "Elmore was the named payee and the Levines were a third party beneficiary of the insurance contract that Selective Insurance issued to Elmore." Additionally, when Selective finally made payment for a portion of the plaintiffs' claims, it issued checks payable to the order of Elmore and Mr. Levine. These facts, if proven at trial, would support a finding that the contracting parties, in this instance, Elmore and Selective, intended the contract to confer a benefit upon the plaintiffs.

III.

The plaintiffs assert that they pled sufficient facts to create a jury issue whether Selective breached its contractual duty of good faith and fair dealing in failing to pay their original loss claim within a reasonable time. Selective argues that the trial court did not err in granting its motion for summary judgment on this claim. We disagree with Selective.

Selective does not dispute the existence of this contractual obligation of good faith and fair dealing. Also, Selective does not dispute that it owes a duty of good faith and fair dealing to the plaintiffs as third-party beneficiaries. Indeed, our precedent recognizes that a third-party beneficiary to a contract is entitled to enforce the terms of the contract and is subject to defenses arising out of the contract. Code § 55-22; Sydnor & Hundley, Inc. v. Wilson Trucking Corp., 213 Va. 704, 707, 194 S.E.2d 733, 736 (1973).

We hold that the plaintiffs pled sufficient facts to support their action for breach of contract based on Selective's alleged breach of its covenant of good faith and fair dealing. As we

have already observed, the plaintiffs promptly notified Selective of the initial loss. After Selective's claim adjuster conducted an on-site inspection, Selective "dallied in reviewing and paying" their claim. Selective asked the plaintiffs and Elmore to provide certain information regarding the loss that Selective already possessed, and it delayed paying the claim. Selective refused to pay the claim despite repeated requests by the plaintiffs and Elmore and repeated warnings that Selective was exposing the remaining structure to additional damage.

We also note that Selective admitted, in its grounds of defense to the plaintiffs' motion for judgment, that "Selective Insurance has refused to pay the Levines for the claim stemming from the [second loss] to their house . . . and has refused to provide any basis for its action." Therefore, we hold that the trial court erred by granting Selective's motion for summary judgment on this claim.

IV.

The plaintiffs argue that the trial court erred by granting the motion for summary judgment because a factual issue exists whether the second loss to their house constitutes a separate loss for which Selective would be liable under the insurance contract. Selective argues that it has no further contractual obligation to the plaintiffs because it has already paid them $112,000, the purported amount of its coverage. We disagree with Selective.

Paragraph 25 of the conditions portion of the insurance contract states, "[a]ny loss paid shall not reduce the amount of this insurance." Obviously, this language was inserted in the

insurance contract to provide coverage, not to exceed $112,000, for each separate loss that occurred during the effective period of the insurance coverage.  Therefore, if the jury finds that the second collapse constitutes a second loss, then Selective would be required to pay for any loss that the plaintiff sustained for an amount not to exceed $112,000.

Next, Selective argues that as a matter of law, the second loss was caused by the plaintiffs' failure to protect their property damaged in the first loss, and, thus, the plaintiffs are not entitled to recover for this "new loss."[3]  We disagree.

The insurance contract states in part:
**PERILS INSURED AGAINST**

We insure for direct loss to the property covered caused by:

. . . .

**2.  Windstorm or hail.**

. . . .

**13.  Collapse of buildings or any part of a building.**

Another provision of the contract, entitled "**OTHER COVERAGES**,"

states in relevant part:
**6.  Reasonable Repairs** -- We will pay the reasonable cost incurred by you for necessary repairs made solely to protect the property covered by this policy from further damage if there is coverage for the peril causing the loss.  Use of this coverage is included in the limit of liability that applies to the property being repaired.

The general exclusions of the contract provide in part:
We do not cover loss resulting directly or indirectly

---

[3]We find no merit in Selective's argument that the plaintiffs failed to raise this issue in the trial court.

from:

. . . .

**5.  Neglect,** meaning your neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

The conditions of the contract state, in relevant part:
**4.  [The Insured's] Duties After Loss.**  In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

. . . .

b.  protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures.

It is true, as Selective points out, that some of these provisions may require that the plaintiffs take certain action to protect their property.  However, the issue whether plaintiffs violated these provisions is a factual question to be determined by the finder of fact.  Therefore, we hold that the trial court's grant of summary judgment was inappropriate.

V.

Accordingly, we will reverse the judgment of the trial court and remand this case for a trial on the merits.

<u>Reversed and remanded</u>.