**HHC ASSOCIATES, Plaintiff,**

**v.**

**ASSURANCE COMPANY OF AMERICA, Defendant.**

**No. 202CV804.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 17, 2003.

Jeffrey F. Brooke, Esquire, Timothy M. Richardson, Esquire, John R. Braley, IV, Esquire, Huff, Poole & Mahoney PC, Virginia Beach, VA, for Plaintiff.

Douglas A. Scott, Esquire, Derrick Walker, Esquire, Durrette Bradshaw, PLC, Richard, VA, for Defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

The present matter comes before the court on defendant's motion for partial summary judgment as to plaintiff's claim for bad faith. For the reasons set forth below, the court **GRANTS** the motion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff HHC Associates ("HHC") owns and leases a commercial building located at 4113 Mercury Boulevard, Hampton, Virginia, known as the Haynes Building. The building was insured by defendant Assurance Company ("Assurance"). On June 8, 2001, HHC discovered that the Haynes Building had sustained water and roof damage, which it promptly reported to Assurance.[1] Assurance, through its parent company Zurich, hired Crawford & Company ("Crawford") to assist and evaluate the claim. At about the same time, HHC hired Goodman–Gable–Gould Adjusters International ("GGG") to assist with the claim.

Crawford conducted a preliminary investigation of the property on June 12, 2001. It arranged for the Geoscience Group ("Geoscience"), roofing experts, to conduct a specialized examination of the property a

---

1. Specifically, the Property Loss of Notice submitted to Assurance describes the damage as water damage resulting from recent storms.

week later. On June 27, 2001, Lyle Hogan, a senior engineer with Geoscience, prepared a letter report stating that the damage to the roof could not be traced to a single storm. Instead, the report blamed the damage on long-term moisture exposure and lack of maintenance. The Geoscience inspectors also reported to Crawford that the Haynes building appeared to be vacant.

Crawford then requested from GGG vacancy and occupancy information for the Haynes Building.[2] In August, GGG provided two leases for the building. For the next several months, the parties wrangled over the sufficiency and relevancy of the requested information. On January 5, 2002, John Henkel of GGG wrote to Pete Hanrahan of Geoscience requesting that Hanrahan name an appraiser, pursuant to Va.Code § 38.2–2105. Hanrahan refused. On January 23, 2002, Geoscience conducted a supplemental inspection of the Haynes building, finding definitively that the damage to the property was not the result of a storm. On February 6, 2002, Assurance denied HHC's claim, asserting that the roof and water damage was the

result of wear and tear, delayed maintenance, and deteriorating materials, rather than the result of a covered peril.[3]

HHC then filed this suit in state court, alleging breach of contract and bad faith handling of an insurance claim. Based on diversity of citizenship, the defendant timely removed the action to this court. Assurance filed the current motion for partial summary judgment, alleging that there is no genuine dispute of material fact regarding Assurance's bad faith. HHC opposes the motion.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fash-*

---

**2.** The insurance contract excludes coverage for water damage if the covered building has been vacant for more than sixty (60) consecutive days prior to the loss or damage. IV. I.2.a. (4).

**3.** The policy excludes damage to the building unless it is a covered cause of loss. It provides, in part:
II. COVERED CAUSES OF LOSS RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE unless the loss or damage is excluded or limited as described below:
A. EXCLUSIONS
2. We will not pay for loss or damage caused by or resulting from any of the following:
c. (1) Wear and tear:
(2) *Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.*

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if an excluded cause or loss is listed in 3.a through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss:
c. Faulty, inadequate or defective:
(4) Maintenance
B. LIMITATIONS
1. We will not pay for loss or damage to
c. The interior of any building or structure, or to personal property *in the building* or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether wind driven or not, unless:
(1) the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; ....

*ions v. Burlington Indus.,* 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the summary judgment motion, the nonmoving party may not rest upon mere allegations in the pleadings, but must set forth specific facts illustrating genuine issues for trial. *See* Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548. "The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). Furthermore, the existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

HHC alleges that Assurance engaged in bad faith by unreasonably delaying its coverage decision and by refusing to participate in an appraisal process. In Virginia, an action for bad faith sounds in contract rather than tort law. *Aetna Cas. & Sur. Co. v. Price,* 206 Va. 749, 146 S.E.2d 220, 228 (1966).[4] If an insurer is found to have "acted in bad faith, [the insured] may recover an amount in excess of the policy limits." *Spence–Parker v. Maryland Ins. Group,* 937 F.Supp. 551, 557–58 (E.D.Va.1996). However, if an insurer is "ultimately found not to have acted in bad faith, then [the insured] may only recover up to the policy's relevant coverage limits." *Id.*

The Supreme Court of Virginia has stated that in evaluating the conduct of an insurer, the trier of fact must consider:

whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

*CUNA Mutual Ins. Soc'y v. Norman,* 237 Va. 33, 375 S.E.2d 724, 727 (1989). Applying these principles to the case at bar, and under the undisputed material facts, there simply is no showing of bad faith on the part of Assurance. Therefore, the court **GRANTS** Assurance's motion for partial summary judgment.

### A. *Denial of Coverage*

HHC asserts that Assurance engaged in bad faith by failing to reasonably investigate the underlying facts of HHC's loss and by delaying its denial of HHC's claim, in violation of Virginia Code § 38.2–209. Specifically, HHC argues that Assurance's requests for, and investigation of, occupancy information for the Haynes Building were unreasonable and that the delay in making the final denial of coverage was outrageous. The court has found

---

4. Virginia Code § 38.2–209 provides, in relevant part:

[I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy ... the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award ... [if] the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

no evidence to support these contentions. Even if the plaintiff had presented such evidence, however, it would have no bearing on whether Assurance engaged in bad faith, according to the test set forth by the Virginia Supreme Court.

The first *CUNA* factor focuses on the policy exclusion relied on by the insurer to deny the claim, and asks whether Assurance's interpretation of policy coverage and exclusions was reasonable. This question must be answered in favor of Assurance. The unambiguous policy provision requires Assurance to pay for those losses that are direct physical losses resulting from a covered peril. The policy specifically excludes from coverage water damage traced to wear and tear. Indeed, the parties themselves do not disagree with regard to the interpretation of the coverage exclusion relied on by Assurance to deny coverage. Rather, they dispute the cause of the damage to HHC's roof. HHC contends that the alleged windstorm—a covered peril—caused the roof damage, while Assurance contends that the leaking roof was attributable to plaintiff's failure to properly maintain the roof—a policy exclusion. The parties do not dispute the *definitions* of "covered peril" or "exclusion." Nor do they dispute that a windstorm is a covered peril while wear and tear is excluded from coverage. Instead, the parties disagree as to the underlying facts which would determine the applicability of those policy provisions. Therefore, the court can only conclude that Assurance's construction of the insurance policy is a reasonable one.

The second and third factors ask whether Assurance made a reasonable investigation of the claim and whether the determination based on the investigation was

reasonable as well. HHC suggests that Assurance did not make a reasonable investigation because it did not consult any weather data, but offers no proof of this contention. There is simply no evidence beyond HHC's bald assertions, that Assurance failed to consult weather data. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of [its] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Moreover, it is irrelevant whether there was a severe storm in the relevant time period because the Geoscience engineers found no evidence that would attribute the damage to storm activity; rather, Geoscience attributed the damage to delayed maintenance, general wear and tear, and deterioration of materials.

The only evidence before the court is that Assurance made its decision regarding coverage of the Haynes Building based on the investigation conducted by the Geoscience Group, independent roofing and engineering experts. According to Lyle Hogan of Geoscience, the Haynes Building has two types of roof systems, EPDM and modified bitumen. The EPDM membrane had several punctures, tears, patches covering areas of earlier punctures, and numerous areas of saturated wood fiberboard. The experts also discovered corrosion of metal form-board, screw fasteners, and bar joists, as well as wood rot and stained ceiling tiles. All of this evidence led the engineers to conclude positively that the damage to the interior was caused by long-term moisture exposure and deferred maintenance.[5] They

---

**5.** In a letter to Assurance, dated January 23, 2002, Lyle Hogan offered a further opinion on why the roof of the Haynes Building was

leaking. He specifically stated that the configuration of the roof—an EPDM membrane

found no evidence, such as blow-off or peel-back of the EPDM membrane, that could be traced to a wind storm.

Through the report prepared by Geoscience, Assurance clearly conducted a thorough investigation of the facts and circumstances underlying HHC's claim and an equally thorough analysis of the causes of the damage to the roof. That analysis suggested unequivocally that the damage was caused by long-term deterioration, not a single storm episode. This evidence reasonably supports a denial of coverage by Assurance. Thus, the second and third factors must be resolved in favor of Assurance.

Finally, there is no evidence with regard to the fourth and fifth factors and, therefore, no issue for trial. *See* Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548.

In sum, HHC has presented no evidence of acts showing bad faith on the part of Assurance. HHC places much emphasis on the eight-month lag between the filing of the claim and its eventual denial, during which Assurance asked HHC for information regarding the occupancy of the Haynes Building, including leases and proof of rental payment. From this, plaintiff infers that Assurance delayed denying the claim in bad faith. This inference does not follow logically or factually. First, HHC lacks factual support for this contention. The correspondence between the two companies shows that Assurance had legitimate questions about the occupancy

of the Haynes Building, which HHC resisted in answering for a period of time. HHC was entitled to determine whether the building was occupied before it made any further determination regarding coverage, particularly given the report from Geoscience.

■ Moreover, even if the delay could be characterized as unreasonably lengthy, it would have no effect on the court's decision. The test for bad faith, as set forth in *CUNA*, does not contemplate the time frame in which an insurance company must make a decision regarding coverage.[6] Indeed, all of the evidence presented indicates that Assurance had a legitimate, reasonable justification for refusing to pay HHC's claim, which denial of coverage is the basis for this lawsuit.

### B. *Refusal to Submit to Appraisal Process*

■ HHC also bases its bad faith claim on Assurance's refusal to submit the issue of coverage to an appraiser, pursuant to Virginia Code § 38.2–2105.[7] Assurance argues that the provision is triggered when the parties dispute the amount of the loss, not when parties dispute the existence of coverage. No Virginia court has considered whether § 38.2–2105 applies to coverage disputes. However, a reading of the plain language of the statute compels the conclusion that the provision is triggered only when the parties disagree as to the amount of loss, not the existence of coverage.

---

on top of an older roof "has proven to be problematic in many other instances."

**6.** Plaintiff's citation to *Levine v. Selective Ins. Co. of America*, 250 Va. 282, 462 S.E.2d 81, 84 (1995), for support is misplaced, In *Levine* the court considered whether an insurance company owed a third party beneficiary the contractual duty of good faith and fair dealing. The case did not involve bad faith denial of coverage pursuant to § 38.2–209, evaluated

under the *CUNA* test. Accordingly, it is inapposite to the issues *sub judice*.

**7.** The provision states, in part, that "[i]n case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then on written demand of either, each shall select a competent and disinterested appraiser...." Va.Code § 38.2–2105.

Moreover, in cases from other states involving appraisal provisions found in insurance contracts with the same or similar language as Virginia Code § 38.2–2105, the courts have found consistently that whether coverage was properly denied is a legal issue reserved for the court alone.[8] *See, e.g., Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, 2003 WL 1744288, at *4 (S.D.N.Y. Mar. 31, 2003) ("disputes that concern coverage denial should not be referred for appraisal") (citations omitted); *Wausau Ins. Co. v. Herbert Halperin Distr. Corp.*, 664 F.Supp. 987, 989 (D.Md.1987) (The "issue [of the application of policy exclusions] is one of contract interpretation which is within the competence of the Court, not an appraiser, to resolve."); *Auto–Owners Ins. Co. v. Kwaiser*, 190 Mich.App. 482, 476 N.W.2d 467, 470 (1991) ("[w]here the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property"); *cf. CIGNA Ins. Co. v. Didimoi Property Holdings*, 110 F.Supp.2d 259, 269 (D.Del.2000) (under circumstances of the case, appraiser may consider causation to determine amount of loss but cannot consider coverage questions, such as whether damage is excluded).[9]

Because Assurance denied coverage, it was not required to submit to an appraisal process pursuant to Virginia Code § 38.2–2105. Its failure to participate, therefore, cannot give rise to an inference of bad faith.[10] Even if the statute were to be given a contrary reading by the Virginia Supreme Court, Assurance would still be entitled to judgment as a matter of law. Assurance's decision to decline to participate in an appraisal process is clearly based on substantial legal authority. Thus, no reasonable jury could find that Assurance engaged in bad faith by refusing to submit the legal question of coverage to an appraiser.

## IV.  CONCLUSION

In sum, HHC has failed to show evidence from which a jury could conclude

---

8.  For example, in the case at bar, a jury must decide questions of fact regarding the cause of the damage to the Haynes Building. Once causation is established, the question of coverage under the insurance contract is one reserved for the court. *See, e.g., Transcontinental Ins. Co. v. RBMW, Inc.*, 262 Va. 502, 551 S.E.2d 313, 317 (2001).

9.  The *CIGNA* case was cited by plaintiff in support of its proposition that an appraiser should be appointed to resolve the coverage dispute in the case at bar. However, the parties in *CIGNA* did not dispute the issue of coverage; instead they disputed the amount of damage that could be attributable to covered losses. 110 F.Supp.2d at 264–269. The court held that an appraiser's assessment of the amount of loss necessarily includes a consideration of causation—whether a particular item is damaged by a covered peril or an excluded peril. Coverage questions, such as the application of policy exclusions, who is insured or what type of risk is insured against, are legal questions in the first in-

stance that are not within the appraiser's authority. *Id.* at 268. Here, at a threshold level, the parties dispute coverage of the entire loss.

10.  Interestingly, the plaintiff did not rely on the appraisal provision in the insurance contract, which reads: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." (Mem. Supp. Def.'s Mot. Partial Summ. J., Ex. 1, at IV.B). Instead, plaintiff relied on the Virginia statute, which simply requires insurance policies to contain such standard appraisal provisions. Presumably, reliance on the insurance contract itself would be a breach of contract claim for failure to abide by the appraisal provision, and there is no breach of the appraisal provision because it is not triggered until such time as a covered loss exists. Likewise, there is no bad faith for violation of the Virginia statute because the insurance contract has a proper appraisal provision.

that Assurance acted in bad faith in denying HHC coverage. Accordingly, Assurance is entitled to judgment on the bad faith claim as a matter of law; any potential recovery by HHC will be limited to the maximum amount of coverage under the policy.

Defendant's Motion for Partial Summary Judgment as to Count II is **GRANTED**. The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the parties.

**IT IS SO ORDERED**.