OPINION AND DISMISSAL ORDER
 

 REBECCA BEACH SMITH, District Judge.
 

 This matter is before the court on defendant’s motion to dismiss and plaintiffs motion for leave to amend the complaint. For the reasons set forth below, defendant’s motion to dismiss is GRANTED. Plaintiffs motion for leave to amend the complaint is DENIED.
 

 I. Factual and Procedural History
 

 This lawsuit arises out of a contract (“the Navy Contract”) between the United States Department of the Navy (“the Navy”) and Paint City Contractors, Inc. (“Paint City”) to repair and paint eight oil tanks owned by the Navy and located in Portsmouth, Virginia. As a condition of the Navy Contract and under the Miller Act, 40 U.S.C.A. §§ 3131-3133 (West.
 
 *DCCCLXI
 
 Supp.2003),
 
 [1]
 
 Paint City was required to obtain a performance bond to ensure performance of the Navy Contract at the contract price. Plaintiff The Hanover Insurance Company (“Hanover”) issued a performance bond guaranteeing Paint City’s performance under the Navy Contract. Also as a condition of the Navy Contract, Paint City was required to hire a quality assurance company. In August, 1999, Paint City hired defendant, Corrpro Companies, Inc. (“Corrpro”), to supply a quality assurance inspector.
 

 On July 30, 2002, the Navy terminated Paint City’s right to proceed with the Navy Contract, allegedly for deficient performance. Hanover alleges that the Navy then made a demand on the performance bond, and that Hanover retained an expert to investigate the Navy’s claim, sought bids to correct the deficiencies, and tendered an alternate contractor to paint and repair the tanks. The difference between the cost of hiring the alternate contractor and the $900,000 unpaid balance of the contract price was allegedly $1,654,900.
 

 On December 18, 2003, Hanover filed a three-count complaint in the above-captioned matter. Count one alleges that Corrpro negligently failed in its duty to Hanover and Paint City to ensure Paint City’s performance of the Navy Contract, and that failure caused Hanover to become obligated under the performance bond. Count two alleges that Corrpro breached its contract with Paint City and asserts that, as a third-party beneficiary of that contract, Hanover is entitled to recover for Corrpro’s alleged breach. Count three alleges that under indemnification principles, Hanover is entitled to recover from Corr-pro the costs of satisfying its obligation under the performance bond.
 

 On March 3, 2004, Corrpro filed a motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a memorandum in support of that motion, and attachments including a copy of the contract between Paint City and Corrpro. On March 17, 2004, Hanover filed a memorandum in opposition to the motion to dismiss and, in the alternative, a motion for leave to amend the complaint to state claims as Paint City’s subrogee. On March 24, 2004, Corrpro filed its reply brief. The motions are ripe for review.
 

 II. Analysis
 

 A.
 
 Corrpro’s Motiorjb to Dismiss
 

 Corrpro moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal of all three counts of the complaint for failure to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim pursuant to Rule 12(b)(6) unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief.
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);
 
 Labram v. Havel,
 
 43 F.3d 918, 920 (4th Cir.1995). A court reviewing such a motion must accept the complaint’s factual allegations as true and view the' allegations in a light most favorable to the nonmoving party.
 
 Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
 
 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993);
 
 GE Inv. Private Placement Part
 
 
 *DCCCLXII
 

 ners II v. Parker,
 
 247 F.3d 543, 548 (4th Cir.2001).
 

 As a general rule, in the context of a motion to dismiss under Rule 12(b), the court may not consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment.
 
 Gay v. Wall,
 
 761 F.2d 175, 178 (4th Cir.1985). However, the court may consider dispositive documents that are either attached to, or referenced in, the complaint.
 
 Moore v. Flagstar Bank, et al.,
 
 6 F.Supp.2d 496 (E.D.Va.1997) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)).
 

 1. No Tort Cause of Action Lies for a Purely Economic Loss Arising From an Alleged Breach of Contract
 

 Count one of the complaint must be dismissed for failure to state a claim because no tort remedy exists for a purely economic loss arising from a broken contract.
 
 See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,
 
 236 Va. 419, 424, 374 S.E.2d 55 (1988) (“Tort law is not designed ... to compensate parties for losses suffered as a result of breach of duties assumed only by agreement. That type of compensation ... remains the particular province of the law of contracts.”);
 
 see also Maersk Line Ltd. v. Care and ADM, Inc.,
 
 271 F.Supp.2d 818, 821-822 (E.D.Va.2003) (discussing “economic loss rule” in a federal maritime case).
 

 Hanover’s only claim in count one is that but for Corrpro’s alleged failure to ensure that Paint City’s performance met the specifications of the Navy Contract, Hanover would not have become obligated under the performance bond to furnish payment for the Navy Contract’s completion. Hanover does not allege injury to persons or property, nor does it allege that Corrpro breached “some duty imposed by law to protect the broad interests of social policy.”
 
 Sensenbrenner,
 
 236 Va. at 424, 374 S.E.2d 55. Thus, no negligence claim lies against Corrpro, and count one is dismissed for failure to state a claim.
 
 [2]
 

 2. Hanover Is Not a Third-Party Beneficiary of the Paint City-Corrpro Contract
 

 In count two, Hanover attempts to state a claim for relief based on Corr-pro’s alleged breach of contract, on the theory that as surety, Hanover was a third-party beneficiary of the Paint City-Corrpro agreement. In order to collect damages under a third-party beneficiary theory in Virginia, a claimant must show that “others have agreed between themselves to bestow a benefit upon the third party.”
 
 Levine v. Selective Ins. Co.,
 
 250 Va. 282, 285, 462 S.E.2d 81 (1995)
 
 (citing Copenhaver v. Rogers,
 
 238 Va. 361, 367, 384 S.E.2d 593 (1989)). The third-party beneficiary must show that the parties to the contract “clearly and definitely intended it to confer a benefit” on the third-party.
 
 Levine,
 
 250 Va. at 286, 462 S.E.2d 81 (citations omitted).
 

 Hanover has failed to allege a clear and definite intent on the part of Paint City and Corrpro to confer a benefit on Hanover. Hanover argues that, because Corr-pro and Paint City were aware that the Miller Act requires a performance bond for all government construction and repair
 
 *DCCCLXIII
 
 contracts exceeding $100,000, they knew that the surety on the performance bond covering the Navy Contract would suffer a loss if that contract was not completed according to specifications. With this knowledge, Paint City and Corrpro entered into an agreement under which Corrpro agreed to furnish consulting services to assure that Paint City’s work met such specifications. Thus, according to Hanover, the Paint City-Corrpro contract was entered into for the benefit of Hanover.
 

 Hanover’s theory of recovery fails as a matter of law. Even assuming that both Paint City and Corrpro were aware that a performance bond had been issued on the Navy Contract, Hanover was only an incidental beneficiary of the Paint City-Corr-pro agreement, not an intended beneficiary. C
 
 f. Maersk,
 
 271 F.Supp.2d at 825 (holding under federal maritime law that shipowner is only incidental beneficiary of fumigation clause in contract between ship charterer and grain supplier). The Paint City-Corrpro contract itself does not mention Hanover or a performance bond. Moreover, according to the complaint, it was the Navy that required Paint City to retain the services of a quality assurance company under the Navy Contract, not Hanover. In short, the facts alleged do not support the conclusion that Paint City and Corrpro “clearly and definitely intended” to confer a benefit on Hanover by entering into the Paint City-Corrpro contract for quality assurance services.
 
 See Levine,
 
 250 Va. at 286, 462 S.E.2d 81. Hanover has no claim to relief as a third-party beneficiary of the Paint City-Corr-pro contract.
 

 3. Hanover Has No Right to Seek Indemnification from Corrpro
 

 Count three fails to state a claim because there is no legal or equitable basis on which to impose a duty on Corr-pro to indemnify Hanover for Paint City’s alleged failure to perform the Navy Contract. “Indemnity” is “[a] duty to make good any loss, damage, or liability incurred by another,” as well as “the right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty.”
 
 Black’s Law Dictionary
 
 772 (7th ed.1999). There are two types of indemnity: “[e]xpress indemnity, based on a written agreement, and implied indemnity, arising out of the relationship of the parties.” 9B
 
 Michie’s Jurisprudence,
 
 Indemnity, § 2, at 487 (1995). In the tort context, a right of indemnity will be implied in equity where a party without personal fault is legally liable for damages caused by another’s negligence.
 
 Carr v. Home Ins. Co.,
 
 250 Va. 427, 429, 463 S.E.2d 457 (1995). “A prerequisite to recovery based on equitable indemnification [in tort] is the initial determination that another person caused the damage.”
 
 Id.
 
 In the contracts context, equity is more hesitant to imply an indemnity right, because if the parties desired to create an indemnitor-indemnitee relationship, they could have done so expressly in the contract. Therefore, “[although an implied right of indemnity may be read into some contracts, only unique factors or a special relationship between the parties give rise to such a right.”
 
 TransDulles Ctr., Inc. v. USX Corp.,
 
 976 F.2d 219, 228 (4th Cir.1992)
 
 (citing Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc.,
 
 706 F.2d 349, 353 (1st Cir.1983)). For example, in admiralty, a shipowner’s indemnity right against a stevedoring company has been recognized, and exists even if the shipowner is not without personal fault.
 
 See Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,
 
 350 U.S. 124, 133-34, 76 S.Ct. 232, 100 L.Ed. 133 (1956). “The rationale for this implied indemnity arises from the shipowner’s nondelegable duty to provide a seaworthy vessel coupled with the fact that a stevedoring company which
 
 *DCCCLXIV
 
 takes control of the ship to unload it is, during the course of that operation, more capable than the shipowner of avoiding accidents.”
 
 Maritime Overseas,
 
 706 F.2d at 363.
 

 There is no basis in tort for an action against Corrpro.
 
 See supra
 
 text at 820. Therefore, any right of indemnity would have to arise from an express indemnity agreement or special contractual relationship. Hanover and Corrpro have no contractual relationship.
 
 See supra
 
 text at 820-21. Thus, count three fails to state a claim upon which relief can be granted.
 

 B.
 
 Hanover’s Motion for Leave to Amend the Complaint
 

 As an alternative to dismissal, Hanover asks the court to grant it fourteen days to amend its complaint in order to file claims against Corrpro as Paint City’s subrogee. Such amendment would be futile, however, because the suretyship arrangement created by the performance bond does not afford Hanover the right to assert a breach of contract, negligence, or indemnity claim on behalf of Paint City.
 

 Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend “be freely given when justice so requires.” Fed.R.Civ.P. 15(a). A motion seeking leave to amend “should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.”
 
 Edwards v. City of Goldsboro,
 
 178 F.3d 231, 242 (4th Cir.1999) (quoting
 
 Johnson v. Oroweat Foods Co.,
 
 785 F.2d 503, 509 (4th Cir.1986)). Amendment is “futile” where the proposed amendment would not remedy the defect in the complaint.
 
 New Beckley Mining Corp. v. Intemat’l Union,
 
 18 F.3d 1161, 1164 (4th Cir.1994).
 

 A performance bond such as that executed between Hanover and Paint City to ensure Paint City’s performance of the Navy Contract is a surety agreement. It creates a three-party relationship in which the surety (Hanover) becomes liable for the duty of the principal (Paint City) to the third-party obligee (the Navy).
 
 See Westchester Fire Ins. Co. v. United States,
 
 52 Fed. Cl. 567, 574 (2002). Under a performance bond, when the principal fails to perform its contractual duties, the surety can discharge its duties under the bond by taking over and completing the contract itself, or by tendering the costs of completion to the obligee. If the surety does not do either of these things, the obligee can sue the surety on the bond.
 
 Id.
 

 Hanover claims that as surety, upon discharge of its duties to the Navy under the performance bond, Hanover was subrogat-ed to the rights of Paint City and acquired the right to sue third parties to recover its losses. Hanover’s argument, however, demonstrates confusion regarding the rights a surety obtains as a matter of law by discharging its liability under a surety contract, and the rights an insurer obtains pursuant to a subrogation clause in an insurance contract.
 
 [3]
 

 A surety contract is not insurance.
 
 See, e.g., Burgoyne v. Frank B. Hall & Co.,
 
 781 F.2d 1418, 1420 (9th Cir.1986) (“[A] surety is not a liability insurer.”) (internal quotation omitted). The surety’s duty under a performance bond is to the obligee (in this case the Navy), not to the contractor. In the insurance con
 
 *DCCCLXV
 
 text, an express subrogation agreement defines the boundaries of the insurer’s ability to pursue the insured’s causes of action against others; whereas in the sure-tyship context, principles of equitable sub-rogation define the surety’s rights to seek reimbursement for the discharge of its duties.
 

 Equitable subrogation “is the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt.”
 
 Federal Land Bank v. Joynes,
 
 179 Va. 394, 401, 18 S.E.2d 917 (1942). “One who rests on sub-rogation stands in the place of one whose claim he had paid, as if the payment giving rise to the subrogation claim had not been made.”
 
 United States v. Munsey Trust Co.,
 
 332 U.S. 234, 242, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). Thus, where the surety discharges its obligation under a performance bond, under traditional equitable subrogation principles the surety is entitled to “stand in the shoes” of the government and seek reimbursement from the principal.
 
 [4]
 

 In addition to traditional equitable subrogation rights, when a surety discharges its obligation to the government under a Miller Act performance bond, the courts have recognized a limited right of the surety to succeed to the contractual rights of a contractor against the government.
 
 See, e.g., Ins. Co. v. United States,
 
 243 F.3d 1367, 1370 (Fed.Cir.2001). Even this right is limited, however, “to recovery from a fund held by the government/owner pursuant to the construction contract.”
 
 Universal Sur. Co. v. United States,
 
 10 Cl.Ct. 794, 797 (1986).
 

 Hanover does not direct the court to any case, nor can the court locate one on its own, in which the surety under a performance bond, upon discharging its contractual obligation to the obligee, was permitted to assert claims against an entity other than the obligee of the surety agreement by “standing in the shoes” of the principal. Suretyship law simply does not contemplate the type of equitable assignment of claims that Hanover asserts it does.
 
 [5]
 
 Therefore, granting Hanover leave
 
 *DCCCLXVI
 
 to amend the complaint to state claims against Corrpro based on Hanover’s status as surety would be futile because the proposed amendment would not remedy the complaint’s failure to state a claim upon which relief could be granted.
 

 III. Conclusion
 

 For the reasons set forth above, Corr-pro’s motion to dismiss is GRANTED. Hanover’s motion for leave to amend the complaint is DENIED. The Clerk is DIRECTED to send a copy of this Opinion and Dismissal Order to counsel for all parties.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Under the Miller Act,
 

 [b]efore any contract, exceeding $100,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States ... (l)[a] performance bond with a surety . . . for the protection of the United States [and] (2)[a] payment bond with a surety ... for the protection of all persons supplying labor and materials.
 

 40 U.S.C.A. § 3133(b) (West Supp.2003).
 

 [2]
 

 . Under some circumstances, the actions of a party in breaching a contract can create both breach of contract and tort claims. Such circumstances exist, however, only where the duty owed to the plaintiff by the defendant is a common law duty, not one that exists solely by virtue of the contract.
 
 Foreign Mission Bd. v. Wade,
 
 242 Va. 234, 240, 409 S.E.2d 144 (1991). Hanover does not allege that Corrpro negligently breached any common law duties.
 

 [3]
 

 . For example, citing the bankruptcy court’s opinion in
 
 In re Hutcherson,
 
 50 B.R. 845, 851 (Bankr.E.D.Va.1985), Hanover states that "[i]t is well-settled law that a surety steps into the shoes of the principal and is entitled to assert the rights of the principal.” PL Opp. to PL [sic] Mot. to Dismiss, at 2.
 
 Hutcherson,
 
 however, involved a subrogation clause in an insurance contract, not a surety agreement.
 

 [4]
 

 .
 
 See also Restatement (Third) Suretyship and Guaranty
 
 § 27(1) (1995). ("Upon total satisfaction of the underlying obligation, the secondary obligor is subrogated to all rights of the obligee with respect to the underlying obligation to the extent that performance of the secondary obligation contributed to the satisfaction.”)
 

 [5]
 

 . The reasons for the differing treatment of the surety and an insurer are plain. The insurer’s financial obligation is to its insured. Thus, when an insurer pays on a claim— whether it pays the insured directly, as under a disability insurance policy, or whether it pays a third-party compensation for an injury, as in a liability policy. — the insured has been made whole, and therefore suffers no prejudice if the insurer becomes entitled to assert the insured's rights. In contrast, the surety’s financial obligation is to the obligee. When the surety discharges its obligation under a performance bond, the obligee is made whole, not the principal. Thus, having made the obligee whole, it follows that equity substitutes the surety in the place of the obligee and permits the surety to seek reimbursement from the principal who, as between the principal and surety, should have paid the costs of completing the contract.
 
 See French v. Stange Mining Co.,
 
 133 Va. 602, 626, 114 S.E. 121 (1922). Given that the principal has not been made whole by the surety agreement, it would be unfair to assign its contract rights against third-parties not involved in the surety agreement to the surety.
 

 For example, in this case, $900,000 of the original contract price was outstanding when the Navy terminated Paint City's right to continue performance under the Navy Contract. Upon completion of the Navy Contract pursuant to the performance bond, the Navy was made whole, and Hanover became entitled both to the $900,000 and to assert the Navy’s contract rights against Paint City. Paint City was entitled to nothing under the performance bond. The economic harm it suffered as a result of being terminated under the Navy Contract is unredressed. Therefore, equity does not operate to generally assign Paint
 
 *DCCCLXVI
 
 City's potential claims against third parties to Hanover.