Allied Terminals, Inc.,
and Ace American Ins. Co.

v.

HMT, Inc.,
and G&T Fabricators, Inc.

September 22, 2014

Case No. (Civil) CL10-1098

BY JUDGE JOHN W. BROWN

This is a case about the collapse of a 3,000,000 gallon fertilizer storage tank (Tank 201) located at Chesapeake Marine Terminals. Plaintiff Allied Terminals, Inc., allegedly entered into a contract with defendant G&T Fabricators, Inc., in 2006, under which G&T would perform repairs and a structural upgrade to the tank for an amount not more than $110,000. Defendant HMT, Inc., subsequently performed an inspection on the tank.

Allied filed a complaint alleging breach of contract, breach of express warranty, breach of implied warranty, negligence, indemnity, and contribution. The complaint did not attach the alleged contract.

HMT filed a demurrer to the complaint, brought for oral argument on August 13, 2014, and followed by briefing submitted by both parties in early September. Additionally, HMT filed a motion craving oyer, which the Court orally granted on August 13, 2014, to allow consideration of the documents allegedly forming the contract at issue. These documents include: (1) an inspection proposal for Tank 208; (2) a requisition form for the inspection and calibration of Tank 201; and (3) an invoice for the inspection of Tank 201, which references the inspection proposal for Tank 208.

For the reasons that follow, the Court sustains in part and overrules in part HMT's demurrer.

## Count One: Breach of Contract

HMT demurs to Count One, arguing that, while a contract may consist of multiple documents under Virginia law, none of the documents produced by the plaintiff were "executed by the parties" so as to constitute a valid agreement. The defendant maintains that the documents attached to the plaintiff's complaint do not form a contract, as the inspection proposal related to Tank 208, the 2007 requisition form was unsigned by any party, and the 2007 invoice was merely stamped with "some markings."

Allied responds that there was a written contract between the parties, consisting of the 2006 proposal for the inspection of Tank 208, the 2007 requisition form for the inspection of Tank 201, and the 2007 invoice for the inspection of Tank 201, referencing the aforementioned 2006 proposal for the inspection of Tank 208. Although the 2006 proposal was for Tank 208, the standards were applied to the Tank 201 inspection, as is evidenced by the reference to the proposal in the Tank 201 invoice, Allied claims.

The complaint does not specify whether the alleged contract is written or oral, and the documents supplied in response to the motion craving oyer are certainly relevant evidence regarding either type of contract. *See, e.g., Reid v. Boyle*, 259 Va. 356, 370 (2000) (noting that parties may evidence modifications to oral contract through their course of dealings); *City of Manassas v. Board of Cnty. Supervisors*, 250 Va. 126, 134 (1995) ("While courts cannot make contracts for the parties, neither will they permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances. This is especially true where there has been partial performance." (quoting *High Knob, Inc. v. Allen*, 205 Va. 503, 507 (1964))); *Clarke v. Collins*, 73 Va. Cir. 12, 15 (Lynchburg City 2006) ("[A]n oral contract must be proved by clear and convincing evidence. This was proven by the actions of the parties. A contract can be proven by a course of dealing and the conduct of the parties. This is particularly true where there has been partial performance of a contract.") (internal citations omitted).

A contract may consist of multiple documents, Allied argues, but there is no requirement that the documents be executed, as HMT claims. Read in concert, Allied maintains that the inspection proposal, the requisition form, and the invoice set forth the terms and conditions of the agreement between the parties.

There is ample Virginia authority for the proposition that multiple documents may be construed together as one contract. *See, e.g., Countryside Orthopedics, P.C. v. Peyton*, 261 Va. 142, 145, 151–53 (2001) (addressing "whether four agreements executed as part of a single transaction to accomplish an agreed purpose should be construed together, even though all the agreements were not executed by the same parties"); *First Am. Bank of Virginia v. J.S.C. Concrete Constr., Inc.*, 259 Va. 60, 67 (2000)

("Manifestly, the language of the documents contemplates that both must be read together to set forth the full understanding of the parties, and neither one standing alone constitute a complete contract.").

As for the application of the Statute of Frauds, the Court notes that, assuming for the sake of argument that the doctrine were relevant, Va. Code § 11-2 merely requires that a writing be signed by the party to be charged. Additionally, the case law regarding the use of documents to evidence the course of dealing of the parties contains no express requirement that such documents be executed by both parties. *Cf. Daughtery v. Diment*, 238 Va. 520, 524 (1989) ("Where a business transaction is based upon more than one document executed by the parties, the documents will be construed together to determine the intent of the parties; each document will be employed to ascertain the meaning intended to be expressed by the others.").

Accepting the allegations of the complaint as true, as we must on demurrer, the invoice for the inspection of Tank 201 expressly references the proposal number for the inspection of Tank 208: "mobilization per proposal # I-609-26509S." The invoice is furthermore stamped and signed by an unknown party. Further scrutiny of this document is not proper on demurrer.

The Court finds that the above-referenced documents, considered in addition to the allegations of the complaint, are sufficient to allow Allied's claim for breach of contract to survive demurrer. Consequently, the Court overrules HMT's demurrer to Count One and declines to rule as to the oral or written nature of the alleged contract at this stage of the proceedings, where the Court may not receive evidence.

### Count Four: Breach of Implied Warranty

HMT demurs to Count Four: Breach of Implied Warranty on the basis that no written contract exists. Furthermore, HMT argues that an inspection report, not attached to the complaint, states: "no implied warranty of merchantability or fitness for purpose shall apply."

The lack of a written contract does not preclude the existence of an implied warranty. *See Mann v. Clowser*, 190 Va. 887, 891 (1950) (implied warranty claim regarding verbal contract). The Supreme Court of Virginia, however, has only applied *Mann* with respect to implied warranties in limited circumstances: construction and the repair of HVAC systems. *See, e.g., American Surety Co. v. Zoby*, 204 Va. 325, 329 (1963); *Willner v. Woodward*, 201 Va. 104, 107–08 (1959). But the instant subject matter, the inspection (and repair) of a fertilizer storage tank, is sufficiently analogous for this Court to find that the claim for breach of implied warranty survives demurrer, even if the contract, on further review, shows itself to be oral in nature.

Although the inspection report, exhibit G, is attached to defensive pleadings and the plaintiff's brief, it is not properly before the Court on demurrer, as it is not an attachment to the complaint. *See, e.g., Patel v. Anjali*, 81 Va. Cir. 264, 265 (Chesapeake City 2010). Even if the document

were before the Court at this stage, as the plaintiff notes, the report was produced as a result of the contract between HMT and Allied; it is not a part of their pre-contract negotiations.

The Court accordingly overrules the demurrer to Count Four.

### Count Seven: Negligence

HMT demurs to Count Seven: Negligence, arguing that the plaintiff fails to identify the source of any duty owed. The demurrer further argues that the complaint fails to allege whether any other party inspected or worked on the tank after HMT's inspection.

"To survive demurrer, a count alleging negligence must contain four basic elements: (1) a duty owed to plaintiff by defendant; (2) a breach of such duty; (3) proximate causation of the plaintiff's injury; and (4) resulting damage to the plaintiff." *E.g., Midgette v. Arlington Props.*, 83 Va. Cir. 26, 29 (Chesapeake City 2011). Rule 3:18 further makes clear that negligence may be alleged without specifying the particular details thereof.

The complaint alleges: "HMT had a duty . . . to exercise due care in the performance of its inspection services, engineering analysis and evaluations, and designation of safe fill heights in accordance with proper industry standards, and to comply with the standards of care and applicable customs and practices. . . ." The defendant counters that no specific common law "design professional" tort duty exists, requiring HMT to exercise such due care. *See McConnell v. Servinsky Eng'g, P.L.L.C.*, 2014 U.S. Dist. Lexis 68750, at *10–11 (W.D. Va. May 20, 2014) ("An engineer performing a professional service pursuant to a contract does not also assume an independent tort duty. Adherence to professional standards is an implicit term of any contract for services from a professional engineer.").

The defendant is correct that the economic loss doctrine precludes a plaintiff from turning every instance of breach of contract into a negligence claim. *See, e.g., Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559 (1998) (addressing fraud and breach of contract claims: for a common law negligence count to survive, it must allege more than "negligent performance of contractual duties"). For a plaintiff to recover for negligence under such circumstances, there must be an independent common law tort duty, and no such duty exists in the instant case. *See, e.g., id.; Nelson v. Commonwealth*, 235 Va. 228, 235 (1988) ("Absent a provision to the contrary, implicit in every contract of employment between an owner and an architect is the duty of the architect to 'exercise the care of those ordinarily skilled in the business'." (quoting *Surf Realty Corp. v. Standing*, 195 Va. 431, 442 (1953))); *Blake Constr. Co. v. Alley*, 233 Va. 31, 34–35 (1987); *Comptroller of Virginia, ex rel. Virginia Military Inst. v. King*, 217 Va. 751, 758–59 (1977) ("[A] an action for the negligence of an attorney in performing professional services, while sounding in tort, is an action for breach of contract.").

Because the plaintiff has alleged no sufficient independent tort duty of care separate from the parties' contract, the Court sustains the demurrer to Count Seven. *See, e.g., Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 491 (2011); *Oleyar v. Kerr*, 217 Va. 88, 90 (1976) ("If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort." (quoting *Burks' Pleading and Practice* § 234 at 406 (4th ed. 1952))). In the absence of a common law duty, whether statutorily or common law based, this Court need not address arguments pertaining to the availability of alternative pleading pursuant to Va. Code § 8.01-272. *Cf. Lockney v. Vroom*, 61 Va. Cir. 359, 369 (Norfolk City 2003) ("While negligence is based on a breach of contract, breach of contract and legal malpractice are simply alternative theories of recovery arising out of the same transaction. For these reasons, the Court overrules paragraph 2 of the demurrer.").

*Count Nine: Implied Indemnity*

HMT demurs to Count Nine: Implied Indemnity because it claims there is no written contract or requisite special relationship between the parties giving rise to a right of equitable indemnification.

A claim for indemnity must arise out of an express or implied contractual relationship. *E.g., Virginia Elec. & Power Co. v. Wilson*, 221 Va. 979, 981–82 (1981). For purposes of analyzing HMT's demurrer, this requirement is satisfied, *see supra*. The documents referenced above, however, contain no express indemnity language. Therefore, any contractual indemnity relationship in this case must be implied.

> Implied indemnification arises from the relationships between the parties. Generally, the principle of implied indemnity arises from equitable considerations. A claim for implied indemnity arises when the indemnitee, the person seeking to assert implied indemnification, has been required to pay damages caused by an indemnitor, a third party. In the implied indemnification context, the indemnitee is liable to the injured party because of some positive duty created by statute or common law, however, the actual cause of the injury to the third party was the act of the indemnitor.

*Winchester Homes, Inc. v. Hoover Universal, Inc.*, 39 Va. Cir. 107, 114 (Fairfax Cnty. 1996) (internal citations omitted).

An implied contractual relationship giving rise to a right of indemnification exists only where there are unique factors or a special relationship between the parties. *See, e.g., Board of Dirs. of Birdneck Villas Condo. Ass'n v. Birdneck Villas, L.L.C.*, 73 Va. Cir. 175, 180 (Virginia Beach City 2007) ("[A]lthough an implied right of indemnity may be read into some contracts, only unique factors or a special relationship between the parties give rise to such a right." (quoting *Hanover Ins. Co. v. Corrpro Cos.*, 312 F. Supp. 2d 816, 821 (E.D. Va. 2004))). There are no instructive decisions of higher Virginia courts regarding the nature of such unique factors or special relationships, unfortunately. It appears that the existence of a simple contract is insufficient. *See id.* (citing *Transdulles Ctr., Inc. v. USX Corp.*, 976 F.2d 219, 228 (4th Cir. 1992)). What may be sufficient, however, is the existence of statutes and regulations that must be read into the relationship between the parties, the existence of a nondelegable duty, etc. *See id.* at 181. In the instant case, no such unique factors or special relationship between the parties has been alleged.

Equitable indemnification is likewise unavailable, since, despite the contractual relationship between the parties and the fact that Allied has incurred derivative liability due to the allegedly negligent act of HMT, there has been no determination that HMT's negligence caused the underlying injuries. *See, e.g., Carr v. Home Ins. Co.*, 250 Va. 427, 429 (1995) ("A prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage. Without that determination, neither the negligent actor nor the innocent party can be held liable for the damages claimed.").

The Court accordingly sustains the demurrer of HMT to Count Nine.

### Count 10: Implied Contribution

HMT argues that Allied's implied contribution count cannot survive demurrer because HMT is not a joint tortfeasor in the referenced underlying *Roberson* and *Caffee* actions that Allied settled. Furthermore, HMT maintains that implied contribution requires a special relationship between the parties, which does not exist in this case.

Allied replies that HMT owes contribution because Allied paid damages to third parties for injuries caused by the negligence of HMT.

"The right to recover contribution 'arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable,' while the cause of action for contribution arises at the time of the jointly negligent acts." *Shiflet v. Eller*, 228 Va. 115, 121 (1984) (quoting *Bartlett v. Roberts Recapping, Inc.*, 207 Va. 789, 793 (1967)). "[T]he right to contribution does not arise out of any express agreement or contract, but is based on broad principles of equity that, where two or more persons are subject to a common burden, it should be borne equally." *Van Winckel v. Carter*, 198

Va. 550, 555 (1956). "[B]efore contribution may be had[,] it is essential that a cause of action by the person injured lie against the alleged wrongdoer from whom contribution is sought." *Bartlett*, 207 Va. at 793.

From Allied's pleading of a cause of action for implied contribution, the existence of a duty owed by HMT to the public at large can be reasonably inferred. *See, e.g., Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013) (stating the familiar requirement that, on demurrer, the allegations of the complaint, and all reasonable inferences drawn therefrom are accepted as true). Injury to the persons and property of these third parties was reasonably foreseeable and actually resulted. *See Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 425 (1988) ("The controlling policy consideration underlying tort law is the safety of persons and property — the protection of persons and property from losses resulting from injury."); *Blake*, 233 Va. at 34–35. The economic loss doctrine does not apply as between HMT and the third parties with whom Allied settled. *See* Va. Code § 8.01-223 ("In cases . . . where recovery of damages for injury to person, including death, or to property resulting from negligence is sought, lack of privity between the parties shall be no defense."). The underlying third-party losses are not alleged to be purely economic, and the source of duty rule discussed regarding the negligence count is inapplicable with respect to the third-party claims in any event. *See, e.g., Ward v. Ernst & Young*, 246 Va. 317, 323–24 (1993) ("We decline, however, to carve out and apply against accountants an exception to the rule we have consistently applied in actions seeking damages for an economic loss resulting from negligent performance of a contractual commitment brought by a non-party to the contract. In four recent cases, we have held that privity of contract is an essential element of such an action at law.").

In this case, examination/survey, inspection, and analysis of the subject tank located near a residential area, which had the capacity to hold up to 3,000,000 gallons of hazardous material was clearly foreseeable as being able to cause substantial damage to the persons and adjacent environment.

The Court consequently overrules the demurrer to Count Ten.

## Conclusion

For the reasons stated above, the Court overrules the demurrer of HMT regarding Counts One, Four, and Ten, but sustains the demurrer with respect to Counts Seven and Nine.